## McKAY v. DUNLAP et al.
### No. 12333.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 31, 1951.

Rehearing Denied Nov. 28, 1951.

James D. Kennedy, James V. Mondin, San Antonio, for appellant.

Perkins, Floyd & Davis, Alice, Strickland, Wilkins, Hall & Mills, Mission, Sharpe, Cunningham & Garza, Brownsville, for appellees.

W. O. MURRAY, Chief Justice.

This suit is in the nature of a bill of review brought by Scott S. McKay as guard-

ian of the person and estate of Katherine Rotge, a person of unsound mind, against B. H. Dunlap, Josephine Dunlap, his wife, and the Cabeza Pasture Company, a Delaware corporation, doing business in the State of Texas, for the purpose of setting aside a judgment rendered on October 31, 1945, in Cause No. 7306 in the District Court of Jim Wells County. Cause No. 7306 was an action in trespass to try title in which Katherine Rotge was plaintiff and the defendants herein were defendants and cross-plaintiffs. It is contended that this judgment was an agreed judgment on its face, but the record shows that testimony was also taken. Plaintiff alleged that his ward was a person of unsound mind at the time the judgment was entered in Cause No. 7306, and that an attorney ad litem was not appointed to represent her. That "her claims and defenses had not been properly presented as a result of her insanity and that she has claims and defenses good and sufficient to entitle her to title and possession to the land and premises involved." On the same grounds plaintiff sought to set aside a warranty deed which was a part of the agreement and compromise in said Cause No. 7306, and by which plaintiff's ward, Katherine Rotge, conveyed to B. H. Dunlap the land which plaintiff seeks to recover. Defendants filed a motion for summary judgment which was granted and judgment was rendered herein denying plaintiff any relief, from which judgment Scott S. McKay as guardian of the person and estate of Katherine Rotge, a person of unsound mind, has prosecuted this appeal.

Appellees in their motion for summary judgment made a part thereof the entire record in said Cause No. 7306. This record being in the same court as the present suit, the court could properly take judicial notice of it. Davis v. Donalson, 91 S.W.2d 763. Appellant, Scott McKay, offered a certified copy of the proceedings wherein Katherine Rotge was, on the 3rd day of June, 1948, adjudged insane. This was two years and seven months after the judgment in Cause No. 7306 had been rendered. Appellant filed no pleadings or affidavit in opposition to the motion for summary judgment.

The evidence in Cause No. 7306 reveals:

(We here copy from appellees' brief.)

"(a) A list of instruments showing a clear and complete chain of title to the lands and premises described in said suit from the State of Texas down to the appellee Cabeza Pasture Company.

"(b) The testimony of Domingo Rotge, Miguel Rotge and McNeil Rotge, three brothers of Katherine Rotge, showing that the appellee, Cabeza Pasture Company, had a clear record, as well as a limitation title to the land and premises described in this suit from their mother, Feliciana C. de Rotge, and that the said Feliciana C. de Rotge departed this life testate, leaving all of her property to Katherine Rotge, but which could not include this property as they gave testimony of the foreclosure against the mother in 1935. That the consideration for the settlement was that said witnesses and their sister would receive a certain portion of the oil produced from said property to be paid to them by the oil company then operating the property, until a certain amount had been paid.

"(c) Tax receipts showing that Cabeza Pasture Company had paid taxes upon said property each year before they became delinquent from 1935 up to and including the year 1945 to the State of Texas, the County of Jim Wells and the Premont Independent School District.

"(d) Stipulation and agreement between Miguel Rotge, McNeil Rotge and Domingo Rotge and B. H. Dunlap et al., setting out the history of the title by, through and under Feliciana C. de Rotge down to Cabeza Pasture Company and the terms of the settlement, which was duly executed by McNeil Rotge, Domingo Rotge, Miguel Rotge and the attorneys for said parties, together with the attorneys for the defendant, B. H. Dunlap et al.

"(e) Stipulation and agreement for settlement between Katherine Rotge and B. H. Dunlap et al., setting out the history of said title from Feliciana C. de Rotge down to Cabeza Pasture Company, and the terms of the settlement whereby Katherine Rotge was to receive $50,000.00. This agreement was signed by Katherine Rotge personally

280

and joined by her attorneys, Fred Bennett and E. A. McDaniel.

"(f) Testimony of Fred E. Bennett given in Cause No. 7306, attorney for Katherine Rotge, setting out the terms of the settlement and that his client had received the amount agreed upon in the settlement. He also testified that he approved the deed signed by Miss Rotge and delivered as a part of the settlement."

It is true that appellant has alleged that his ward was insane at the time judgment was rendered in Cause No. 7306 and the deed in question executed. He does not contend that she had been adjudged to be insane at that time, but only that she was in truth and in fact insane at the time. Her adjudication of insanity came some two years and seven months later. In considering appellees' motion for summary judgment, the insanity of appellant's ward at the time the judgment was rendered and the deed executed would be immaterial unless and until appellant could show that he was in possession of some evidence which would tend to contradict the sworn testimony which the trial judge had before him showing that appellees would be entitled to recover the land even if the judgment and deed were set aside.

The trial court had before him all of the testimony introduced in Cause No. 7306, showing prima facie that appellant's ward did not have any interest in the land in controversy, but, on the other hand, that the Cabeza Pasture Company had not only a record title but also a limitation title to the land independently of whether the judgment in Cause No. 7306 or Katherine Rotge's deed were valid or not. With these facts being shown by testimony of which the trial court was required to take judicial notice, appellees were entitled to have their motion for summary judgment granted unless appellant could show in some way that he was in possession of evidence that would contradict this sworn testimony and change the result. This appellant did not do and the trial court properly granted appellees' motion for a summary judgment.

In Davis v. Donalson, Tex.Civ.App., 91 S.W.2d 763, 765, which was a suit in the nature of a bill of review, the Court said: "It is generally held, in suits of this nature, allegations are taken as true only so far as they are not in conflict with the facts disclosed in records to which the trial courts may refer and of which the courts are authorized to take judicial notice. Snow v. Cook, supra, (Tex.Civ.App., 278 S.W. 520). The records take the place of the recitals in the petition; and, if the petition is in conflict with the records, the review is not warranted by the pleadings, but will be considered merely as the conclusion of the pleader, and subject to a general demurrer."

In Gifford v. Travelers Protective Association of America, 9 Cir., 153 F.2d 209, 211, the rule is stated thus: "Where a defendant presents evidence on which it would be entitled to a directed verdict if believed and which the plaintiff does not discredit as dishonest, it rests on the plaintiff, in opposing defendant's motion for summary judgment, at least to specify some opposing evidence which it can adduce and which will change the result. Radio City Music Hall Corporation v. United States, 1943, 2 Cir., 135 F.2d 715."

In Fletcher v. Evening Star Newspaper Co., 77 U.S.App.D.C. 99, 133 F.2d 395, the Court said:

"The controlling question raised on this appeal is whether a lower court, on a motion made for summary judgment, and in determining that there is no genuine issue as to any material fact, can take judicial notice of its own records in concluding the issue thus raised.

"We take this to be too well settled to be seriously questioned."

Appellant contends that he should have been permitted to amend his pleadings, but the record fails to show that he requested additional time for filing an amended pleading, nor does it show that there was anything which he might have brought forth by amended pleadings which would have changed the result of the judgment entered by the trial court.

Accordingly, the judgment of the trial court is affirmed.